1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   CARL CRIBBS,                          CASE NO. 1:11-cv-00654-AWI-SMS

10                          Plaintiff,

11          v.                            FINDINGS AND RECOMMENDATIONS
                                          RECOMMENDING THAT THE COURT
                                          AFFIRM DENIAL OF BENEFITS AND
12   MICHAEL J. ASTRUE,                   ORDER JUDGMENT FOR COMMISSIONER
     Commissioner of Social Security,

13
                            Defendant.
14   _____/

15
16          Plaintiff Carl Cribbs, by his attorneys, Law Offices of Jeffrey Milam, seeks judicial

17   review of a final decision of the Commissioner of Social Security ("Commissioner") denying his

18   application for disability insurance benefits (DIB) under Title II of the Social Security Act and

     for supplemental security income  ("SSI") pursuant to Title XVI of the Social Security Act (42
19
     U.S.C. § 301 *et seq.)* (the "Act").   The matter is currently before the Court on the parties' cross-
20
     briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United
21
     States Magistrate Judge.  Following a review of the complete record and applicable law, the
22
     undersigned recommends that the Court affirm the Commissioner's denial of benefits.
23
     **I.     Administrative Record**
24
            **A.      Procedural History**
25
            Plaintiff was insured under the Act through December 31, 2011.  On November 7, 2007,
26
     Plaintiff applied for disability insurance benefits pursuant to Title II and supplemental security
27
     income ("SSI") under Title XVI.  Plaintiff alleged disability beginning January 30, 2007.  His
28

claims were initially denied on March 6, 2008, and upon reconsideration, on July 24, 2008.  On

August 20, 2008, Plaintiff filed a timely request for a hearing.  Plaintiff appeared and testified at

a hearing on January 11, 2010.  On January 29, 2010, Administrative Law Judge James P. Berry

denied Plaintiff's applications.  The Appeals Council denied review on February 23, 2011.  On

April 22, 2011, Plaintiff filed a complaint seeking this Court's review.

### B.    Administrative Record

**Plaintiff's testimony.**  Plaintiff (born May 4, 1950) completed high school and attended

truck driving school.  He drove trucks in eleven western states for seventeen or eighteen years

until he lost his license in 2007 because of high blood pressure and diabetes.  He did not load or

unload the trucks that he drove.  Plaintiff thought he could have kept driving a truck if he had not

failed the physical, but he also questioned whether he would be able to pull himself up to the

seat.  He did not think he could drive for a full eight-hour day or tarp a truck.  Plaintiff expressed

fear that his medication would cause him to fall asleep behind the wheel.

Plaintiff testified that he had breathing problems and that his legs, feet, and back hurt.

Sometimes he felt dizzy when he stood up, causing him to fall on several occasions.   He did not

see well but thought he simply needed glasses.  He attributed his foot pain to diabetes.  Propping

up his feet relieved the discomfort. His feet began to swell about twenty minutes after he began

sitting in a chair with his feet down.

Plaintiff thought he had emphysema, based on a comment made by the surgeon who had

removed his gallbladder a year and a half earlier.  Walking fifteen feet into the kitchen required

him to rest and catch his breath before he could eat.

Plaintiff testified that he could walk three blocks to the store but would have to rest on the

way back.  He could carry five or ten pounds at most.  He thought that he could stand up for

twenty minutes three or four times in a work day, but he could sit a lot, even if he did not elevate

his feet.

Plaintiff spent his entire day in a recliner, watching television in a dark room.  He lived

with his niece and her husband, who performed most of the house and yard work.  He

occasionally washed dishes, but "it just [hurt] too long standing there."  AR 38.  He did his own

laundry, sitting down while the clothes were in the washer and dryer. Plaintiff did not interact with his niece and her husband, stating that he preferred to be by himself. He denied experiencing crying spells. His only source of support was food stamps.

**Adult disability report.** Plaintiff reported that he was five feet, nine inches tall and weighed 290 pounds. His ability to work was limited by diabetes and shortness of breath. His current medications included Amben (high blood pressure), Glipizide (diabetes), and Metformin (diabetes). Side effects included sleepiness, dry mouth, and diarrhea.

Plaintiff later updated his report, adding that he experienced depression with poor concentration starting January 1, 2008, and that he had developed numbness in his hands and feet.

**Attorney-prepared questionnaires.** On December 8, 2007, Plaintiff completed a fatigue questionnaire on a form apparently prepared by his attorney. He indicated that his fatigue began when he started taking blood pressure medication. Plaintiff need to take breaks every ten minutes while walking. He napped about three hours each day. Despite his fatigue, Plaintiff could maintain concentration and attention to finish tasks.

At the same time, Plaintiff reported details of his fatigue on an exertional daily activities questionnaire prepared by his attorney. He added that his shortness of breath mandated frequent breaks and that his chronic diarrhea kept him close to the bathroom. Walking to the end of the block left him light-headed. He did his own grocery shopping and lifted grocery bags once or twice a week; vacuumed floors for one-half hour; and could drive about one-half hour. Plaintiff reported that he worked for ten minutes, then took a twenty-minute break. He slept twelve hours daily, including three one-hour naps.

**Third-party adult function report.** Plaintiff's niece, Jody Ellis, reported that Plaintiff washed dishes, watched television, took her dog outside, and helped with her eight-year-old grandson. On days that the child did not attend school, Plaintiff watched him and prepared a soup or sandwich lunch. Plaintiff frequently went outdoors and to the store. Although he could count change, Plaintiff was easily confused about money.

///

Plaintiff needed to be reminded to bathe.  He became breathless easily.  His impairments affected his ability to lift, squat, bend, walk, kneel, climb stairs, complete tasks, concentrate, understand, and follow instructions.  Plaintiff had difficulty handling stress and was confused by changes in routine.  He got along well with authority figures.

**Adult function report.**  On April 24, 2008, Plaintiff reported that his daily activities included watching television, washing dishes, and taking the dog out.  Sometimes he had trouble sleeping.  He had no problem with personal care but needed to be reminded to shower.  His cooking abilities had not changed.  He went outside three times daily and drove a car.  He was able to pay bills and count change.  The only change in his activities was that he no longer drove a truck.  On March 13, 2009, Plaintiff completed a substantially similar report.

**Medical records.**  The Tulare Community Health Clinic provided continuing medical care for Plaintiff at regular intervals from April 4 through November 29, 2007.  Ravi Kumar, M.D., diagnosed Plaintiff with morbid obesity, hypertension, metabolic syndrome, uncontrolled diabetes mellitus type 2, abnormal liver function tests, and dyslipoproteinemia, and prescribed glipizide, metformin, amlodipine and benazepril, and enteric-coated aspirin.  Dr. Kumar also directed Plaintiff to follow an 1800-calorie ADA diet and get regular exercise.  He noted that Plaintiff had uncontrolled diabetes and was noncompliant with his treatment.  Random blood sugar tests at Plaintiff's follow-up appointments ranged from 144 to 269.  In the course of treatment, Plaintiff stopped smoking.  On April 4, 2007, Dr. Kumar noted that Plaintiff's truck driver's license had been suspended due to his hypertension.

An ultrasound performed on June 12, 2007, confirmed that Plaintiff had gallstones.

On February 19, 2008, agency consultant Emmanuel Fabella, M.D., administered a pulmonary function test.[1]  He noted that Plaintiff had no obstructive lung disease and no evidence of restrictive lung disease.

///

---

[1]  Agency consultant Charles Fracchia, M.D., had requested administration of a pulmonary function test to rule out chronic obstructive pulmonary disease (COPD) in light of Plaintiff's high red blood cell count and complaints of shortness of breath.

On March 5, 2008, agency consultant Charles A. Fracchia, M.D., opined that Plaintiff could lift or carry fifty pounds occasionally and 25 pounds frequently; could sit, stand, or walk six hours in an eight-hour workday; and had unlimited ability to push and pull.  In an associated case analysis, Dr. Fracchia opined that Plaintiff's major functional problem was obesity, but that he was capable of medium work.

On or about March 12, 2008, Plaintiff began treatment at Hillman Health Center, where he was treated by Chi Nguyen, M.D., and physician's assistant Christina Erwin.  Erwin noted extreme obesity and blood sugar of 113.  On March 26, 2008, after Plaintiff complained of depression, Dr. Nguyen prescribed Effexor, an antidepressant.  Plaintiff's random blood sugar was 109.  On August 13, 2009, Dr. Nguyen, who consistently noted that Plaintiff needed to reduce his weight, observed that Plaintiff needed to lose 130 pounds.

On May 1, 2008, Ms. Erwin completed a questionnaire prepared by Plaintiff's attorney. She indicated that Plaintiff's diagnoses included diabetes, depression, and high blood pressure. Erwin opined that Plaintiff could sit for eight hours, and stand or walk for two hours, in an eight-hour workday.  Plaintiff was totally restricted from working in temperature extremes. Erwin opined that Plaintiff was not disabled and was capable of sedentary work.

On July 14, 2008, agency psychologist A. Middleton, Ph.D., performed the psychiatric review technique.  He rejected Plaintiff's claim of disabling depression since Plaintiff's diagnosis was less than twelve months before.  On an associated case analysis, Roger Fast, M.D. opined that Plaintiff's claims of shortness of breath lacked credibility in that they were attributable to his deconditioning and lack of compliance with diabetes treatment.

On September 2, 2008, surgeon Cesar Ramos, M.D., removed Plaintiff's gall bladder and repaired his umbilical hernia.

On June 4, 2009, Prudence Smith, M.D., evaluated the MRI administered after Plaintiff complained of back pain following a fall.  Dr. Smith identified some degenerative spurring and mild disk space narrowing at L5-S1, but found no evidence of compression fracture or listhesis.

**Vocational expert.**  Vocational expert Thomas Dachelet testified that, as listed in the DOT, truck driving was medium, semiskilled work, SVP 4.  As Plaintiff performed his prior

1  work, he was required to lift 100 pounds, making his prior job heavy work as Plaintiff had

2  performed it.

3        For the first hypothetical question, the ALJ directed Dachelet to assume a 59-year-old

4  individual with a twelfth grade education and Plaintiff's relevant work experience.  The

5  individual had a combination of severe impairments but retained the ability to lift and carry fifty

6  pounds occasionally and 25 pounds frequently, and to stand, sit, and walk six hours each in an

7  eight-hour work day.  Dachelet opined that the hypothetical individual could perform the work of

8  truck driving as described in the DOT but not as Plaintiff had previously performed it.

9        For the second hypothetical question, the ALJ directed Dachelet to assume the same

10  individual described in question one except that the individual now retained the capacity to lift

11  and carry a maximum of five to ten pounds, to stand and sit for a maximum total of eighty

12  minutes, and to walk approximately three blocks.  The hypothetical individual needed to elevate

13  his lower extremities, became drowsy during the day, and needed to take a break or nap.  The

14  individual also had difficulty relating to and interacting with others.  Dachelet opined that such a

15  person could not perform Plaintiff's prior job or any other work.

16  **II.   <u>Legal Standards</u>**

17        To qualify for benefits, a claimant must establish that he or she is unable to engage in

18  substantial gainful activity because of a medically determinable physical or mental impairment

19  which has lasted or can be expected to last for a continuous period of not less than twelve

20  months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental

21  impairment of such severity that he or she is not only unable to do his or her previous work, but

22  cannot, considering age, education, and work experience, engage in any other substantial gainful

23  work existing in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir.

24  1989).

25        To encourage uniformity in decision making, the Commissioner has promulgated

26  regulations prescribing a five-step sequential process for evaluating an alleged disability.  20

27  C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f).  The process requires consideration of the following

28  questions:

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five. |
| Step five: | Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 30, 2007.  His severe impairments were obesity and diabetes mellitus.  Neither of these impairments met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  Plaintiff had the residual functional ability to lift and carry 50 pounds occasionally and 25 pounds frequently, and to sit, stand, and walk six hours in an eight-hour work day.  He was able to perform his past relevant work as a truck driver.  Accordingly, the ALJ concluded that Plaintiff was not disabled.

**III.    Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

7

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As the Commissioner points out, the sparse record in this case provides little evidence to support Plaintiff's claim that he is disabled. Even the assistant to Plaintiff's own treating physician opined that he was not disabled. The medical records that Plaintiff submitted to the agency document a series of routine visits to Plaintiff's primary care physicians for ongoing care of common and treatable disorders: type 2 diabetes, high blood pressure, and obesity.

## IV.   Plaintiff's Credibility

In a disorganized and rambling discussion, Plaintiff asserts nine reasons why the ALJ erred in finding his testimony not fully credible. The Commissioner counters that Plaintiff's arguments have no merit. This Court agrees with the Commissioner.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if he or she decides to reject a claimant's testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). *See also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did

1    not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

2    2002).

3          When weighing a claimant's credibility, the ALJ may consider the claimant's reputation

4    for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct,

5    claimant's daily activities, claimant's work record, and testimony from physicians and third

6    parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social*

7    *Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary

8    techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent

9    statements concerning the symptoms, and other testimony by the claimant that appears less than

10   candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

11   prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*,

12   533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If

13   the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her

14   decision. *Thomas*, 278 F.3d at 959.

15         The Ninth Circuit has summarized the applicable standard:

16         [T]o discredit a claimant's testimony when a medical impairment has been
           established, the ALJ must provide "'specific cogent reasons for the disbelief.'"
17         *Morgan*, 169 F.3d [595,] 599 [9[th] Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The
           ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.*
18         Where, as here, the ALJ did not find "affirmative evidence" that the claimant was
           a malingerer, those "reasons for rejecting the claimant's testimony must be clear
19         and convincing." *Id.* Social Security Administration rulings specify the proper
           bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a
20         claimant's testimony cannot be supported by reasons that do not comport with the
           agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do
21         not have the same force and effect as the statute or regulations, they are binding
           on all components of the Social Security Administration, . . . and are to be relied
22         upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129,
           1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability
23         determination was contrary to agency rulings and therefore warranted remand).
           Factors that an ALJ may consider in weighing a claimant's credibility include
24         reputation for truthfulness, inconsistencies in testimony or between testimony and
           conduct, daily activities, and "unexplained, or inadequately explained, failure to
25         seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603;
           *see also Thomas*, 278 F.3d at 958-59.
26
           *Orn*, 495 F.3d at 635.
27
28   ///

9

Judge Berry found that Plaintiff's impairments could reasonably be considered to cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms were not fully credible.  In a lengthy discussion at AR 21-22, the ALJ carefully documented medical evidence in the record that revealed (1) Plaintiff's repeated failure to monitor his blood sugar despite repeated direction by his physicians and repeatedly being provided with blood sugar meters and test strips; (2)  Plaintiff's failure to exercise, watch his diet, and lose weight; (3) MRI evidence establishing only minor disc space narrowing in Plaintiff's back; (4) a pulmonary function test that revealed no obstructive lung disease nor restrictive lung disease; and (5) repeated medical notes that Plaintiff's lungs were not obstructed. The ALJ accepted Plaintiff's April 2008 adult function report.  He wrote:

> A careful review of the record does not support the severity of Plaintiff's alleged limitations.  During testimony, the claimant admitted that he could have continued as a truck driver in 2007 if he had passed his physical examination and obtained DMV approval to keep his Class A driver's license.  In addition, his testimony that he takes his medications to control his diabetes as required is contradicted by numerous medical records documenting his non-compliance with prescribed medications and treatment from at least November 2007 through November 2009, even though he was continually advised of the importance of compliance for his overall health.  Further, records and the claimant's own testimony do not support his claims of debilitating depression.  He testified he was not taking medication for depression, and no persistent debilitating symptoms from depression were mentioned in treating records.

AR 22 (*citations to hearing exhibits omitted*).

## A.    Compliance with Physicians' Instructions

Plaintiff argues that stating that Plaintiff was non-complaint with his physicians' instructions was not sufficient: the ALJ was required to consider Plaintiff's reasons for his noncompliance.  Plaintiff misinterprets the law that he cites.

Social Security Ruling 96-7p clarifies the evaluation of a claimant's alleged symptoms in view of the claimant's credibility.  With regard to treatment history, the ruling provides:

> [T]he individual's statements may be less than credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.  However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any

///

explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p at *7.

The ruling suggests that the following may constitute good reasons for a claimant's not seeking medical treatment: (1) structuring activities to minimize or eliminate symptoms, avoiding stressors that aggravate symptoms, and consulting a medical professional only for evaluation and provision of medications; (2) the claimant's symptoms are not severe enough to prompt the claimant to seek professional treatment or may be satisfactorily ameliorated by over-the-counter medications; (3) the claimant may eschew medications with side effects that outweigh the medications' benefits; (4) the claimant is unable to afford treatment and lacks access to free or low-cost services; (5) a medical source has advised the claimant that no further, effective treatment will be of benefit; or (6) medical treatment is contrary to the tenets and teaching of the claimant's religion. *Id.* at *8.

In this case, Plaintiff had ready access to medical professionals and saw his treating physicians for regular follow-up appointments.  His treating physicians provided him with the specific responsibilities for his own ongoing care: to take medication, to monitor his blood sugar, to adhere to an 1800-calorie ADA diet, and to exercise at least two times each week.  On multiple occasions, Dr. Kumar provided Plaintiff with monitors and testing strips.  Instead of complying with his physicians' instructions, Plaintiff retired to his room and television, and sought disability benefits.

Confusing cause and effect, Plaintiff argues that he gained weight after he lost his driver's license and quit smoking, falling into a spiral of obesity and depression.  The record belies this argument since Plaintiff already weighed 298 pounds at his initial visit to the Tulare Community Health Clinic on April 4, 2007.  At that appointment, Plaintiff reported smoking, and Dr. Ali diagnosed him with nicotine addiction.  (Plaintiff later claimed that he stopped smoking on May 26, 2007.  AR 236.)  Plaintiff did not complain of depression until March 2008.

Plaintiff quotes SSR 02-1p in support of the proposition that the Commissioner will rarely rely on a claimant's failure to follow treatment for obesity.  The relevant provision reads:

1   Our regulations at 20 CFR 404.15630 and 416.930 provide that, in order to get
    benefits, an individual must follow treatment prescribed by his or her physician if
2   the treatment can restore the ability to work, unless the individual has an
    acceptable reason for failing to follow the prescribed treatment.  We rarely use
3   "failure to follow prescribed treatment" for obesity to deny or cease benefits.

4   SSR 02-1p at *9.

5   The provision then directs the evaluator to SSR 82-59, which provides that an evaluator

6   may find that a claimant has failed to follow prescribed treatment only if all of the following

7   conditions exist: (1) The claimant has an impairment that meets the definition of disability

8   including the duration requirement; (2) the treating source has prescribed a treatment that is

9   clearly expected to restore the claimant's ability to engage in substantial gainful activity; and (3)

10  the evidence shows that the claimant has failed to follow the prescribed treatment without good

11  reason.  SSR 02-1p at *9.

12          Plaintiff maintains that his doctors did not specifically direct him to lose weight as part of

13  prescribed treatment.  The record does not support his contention.  Dr. Kumar's treatment notes

14  clearly indicate that Plaintiff was directed to follow an 1800-calorie ADA diet and get regular

15  exercise, defined as exercise at least twice a week.  Nor was the objective for Plaintiff's weight

16  loss modest: Dr. Nguyen noted Plaintiff's need to lose 130 pounds, approximately 38 percent of

17  his weight.  Nothing in the record suggests that Plaintiff, who reported cooking soup,

18  sandwiches, and TV dinners, made any effort to follow the prescribed diet or to exercise twice a

19  week.

20          Nor does Plaintiff advance a legitimate excuse for his failure to monitor his blood sugar.

21  Even if Plaintiff was unable to afford a glucose meter and test strips, as he contends, Dr. Ali

22  provided a glucometer, test strips, and lancets on May 9, 2007, at the first appointment after

23  fasting blood tests confirmed a diagnosis of diabetes.  AR 239.  At the follow-up appointment on

24  July 5, 2007, Plaintiff told Nurse R. Lopez that he was not checking his blood glucose because he

25  could not afford test strips.  Nurse Lopez provided a True Track meter.  AR 236.  At his

26  appointment on August 3, 2007, Plaintiff again told Nurse Lopez that he was not checking his

27  blood glucose because he could not afford test strips.  Nurse Lopez provided a Freestyle Flash

28  meter and 60 test strips, and instructed Plaintiff in the meter's use.  AR 234.  Dr. Nguyen again

provided a meter and test strips on March 12, 2008, when Plaintiff was first treated at Hillman Health Center.  Despite repeatedly being provided with a glucose meter and test strips, Plaintiff failed to monitor his blood sugar.

Dr. Fast also found Plaintiff's claims of shortness of breath not credible in that the symptoms were attributable to Plaintiff lack of physical conditioning and failure to follow prescribed treatment of his diabetes.

The ALJ appropriately concluded that Plaintiff failed to follow medication and treatment recommendations.

**B.    Plaintiff's Back Pain**

Arguing that a claimant may suffer from severe limitations that are not reflected by objective medical evidence, Plaintiff contends that the ALJ erred in rejecting his testimony regarding his back pain as unsupported by medical evidence. Plaintiff's contention has little merit.

If an ALJ decides to reject a claimant's pain testimony after a medical impairment has been established, he or she must make specific findings assessing the credibility of the claimant's subjective complaints.  *Ceguerra*, 933 F.2d at 738.  Here, Plaintiff failed to established that his claims of debilitating back pain were supported by an established medical impairment.  The sole objective medical evidence regarding Plaintiff's claims of back pain is the report of a screening MRI administered after Plaintiff fell in June 2009.  Dr. Smith, who evaluated the MRI, identified mild disk space narrowing at L5-S1 and some degenerative spurring but no compression fracture or listhesis (displacement of a vertebra).  The administrative record includes no medical documentation of Plaintiff's complaining of chronic back pain or being treated for chronic back pain. The ALJ did not err in concluding that the medical evidence did not support Plaintiff's claim.

**C.    Plaintiff's Shortness of Breath**

Plaintiff claims that the ALJ erred in rejecting his testimony regarding shortness of breath.  Although the ALJ acknowledged Plaintiff's complaints, the pulmonary function test administered by Dr. Fabella, M.D., revealed that Plaintiff had neither obstructive lung disease nor

evidence of restrictive lung disease, and multiple examination notes reported that Plaintiff's

lungs were clear.  Dr. Fast noted that Plaintiff's shortness of breath was attributable to his lack of

conditioning (i.e., failure to exercise as directed by his doctors) and failure to follow prescribed

treatment of his diabetes. Thus, the ALJ's determination was supported by substantial evidence.

That Plaintiff would have relied on other evidence in the record is immaterial.  *Key*, 754 F.2d at

1549 ("Where the evidence as a whole can support either outcome, we may not substitute our

judgment for the ALJ's").

### D.   Plaintiff's Testimony That He Could Have Continued to Work.

Plaintiff complains that the ALJ erred in relying on his statement that he could have

continued to work in 2007 if his Class A driver's license had not been revoked and that the ALJ

took his statement out of context.  The interchange occurred at the beginning of the ALJ's

examination of Plaintiff:

Q      When you took your physical to maintain your commercial driver's license, what year was that?

A      '07

Q      2007?

A      Yes, sir.

Q      Okay.  Now if you had passed the test do you think you would have been able to continue to drive a truck?

A      If I passed the test?

Q      Yeah.

A      I think so.

Q      Do you think you would have been able to perform any other types of jobs at that time other than truck driving?

A      I don't know, because I just, it's hard moving around, trying to breathe okay.

AR 42.

The ALJ hardly took Plaintiff's testimony out of context.  The hearing decision

appropriately addresses this portion of Plaintiff's testimony in the course of a several-paragraph

discussion of Plaintiff's credibility in light of the failure of the objective record to support

Plaintiff's testimony.  The ALJ's determination was supported by substantial evidence.  That Plaintiff favored reliance on his later testimony in response to his attorney's leading questions intended to rehabilitate him is immaterial.  *See Key*, 754 F.2d at 1549 ("Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's").

### E.   **Plaintiff's Depression**

Plaintiff quibbles with the ALJ's use of the phrase "debilitating depression," arguing that he merely claimed depressed feelings, not debilitating depression.  Since Plaintiff contended that his depression was one of the severe impairments that rendered him unable to work, use of the term "debilitating depression" is hardly unacceptable hyperbole.   This contention lacks merit.

### F.   **Plaintiff's Adult Function Reports**

Plaintiff contends that the ALJ erred in accepting the adult function report he prepared and dated April 24, 2008, but not the report prepared March 13, 2009.  In the hearing decision, the ALJ confirmed that he had reviewed both reports, recited detailed information from the April 2008 report, and stated that he found the April 2008 report to be generally credible and entitled to substantial weight. Other than indicating that the ALJ had reviewed both reports, the hearing decision neither discusses the March 2009 report nor explicitly rejects it as Plaintiff claims.  Further, Plaintiff concedes that the two reports are substantially similar except that the March 2009 report did not indicate that Plaintiff cared for animals or drove.  This baffling contention is devoid of any  merit.

### G.   **Plaintiff's Driver's Licenses**

Plaintiff contends that the ALJ unfairly found Plaintiff's testimony that he did not drive because the DMV took his license inconsistent with his testimony that he retained his personal license but did not drive because he did not have a car.  Although Plaintiff cites to the portions of the hearing transcript in which he testified regarding his two driver's license, he does not cite to the portion of the hearing decision to which he objects.  The Court is unable to find any objectionable matter in the hearing decision.  It appears that the ALJ did no more than accurately find facts based on Plaintiff's testimony:

///

The claimant testified that he had worked for 18 years as a truck driver and he testified that he did not do any other kind of work in the last ten years. He testified he last worked almost 2 years ago as a truck driver because DMV pulled his Class A license in 2007 when he failed the physical. I asked him whether, in the event [DMV] had not pulled his truck driver's license, he would have been able to continue to drive a truck, he responded "yes." He testified that the reason he does not drive now is because he does not have a car, but admitted he still has a regular driver's license.

AR 20.

The ALJ's account of Plaintiff's testimony was not error.

## H.    **Plaintiff's Long Work History**

Plaintiff contends that, in assessing Plaintiff's credibility, the ALJ failed to take into account his long work history. As indicated in the quotation from the hearing decision in Section IV G above, the ALJ acknowledged Plaintiff's long work history. That the ALJ failed to give Plaintiff's work history the controlling weight that Plaintiff would have had him give is not error.

## I.    **Side Effects of Medication**

Finally, Plaintiff contends, without further explanation, that the ALJ's credibility analysis inappropriately failed to acknowledge the side effects of Plaintiff's medications. Plaintiff does not explain how the side effects of Plaintiff's medications weighed against the ALJ's assessment that Plaintiff's testimony was not fully credible. Further, in his factual summary, the ALJ acknowledged Plaintiff's testimony regarding medication side effects, writing that, "He testified that his medications make him sleepy but he is not sure." AR 20. The ALJ's finding was consistent with Plaintiff's testimony in response to his attorney's questions:

Q      Okay. Do you have any reactions to medications?

A      When I eat a bunch of them in the morning I know, couple hours later I'll wake up.

Q      Okay, so --

A      I don't know if they put me to sleep. A lot of them say they make you drowsy.

Q      Okay, so you get drowsy from the medication?

A      Yeah I would assume so.

Q      Okay. And how long after you take the medication do you realize you're waking up?

1    A      Couple hours.

2    Q      Okay.  And does that happen every day?

3    A      Yeah.

4    AR 38.

That Plaintiff testified that he experienced side effects from his medications has no effect on the ALJ's determination that Plaintiff's testimony was less than fully credible.

## V.   Nurse Erwin's Report

Plaintiff contends that the ALJ should have treated the opinion of nurse practitioner Christina Erwin as an opinion of a treating physician.  He argues that the ALJ should have simply deemed Erwin's opinion to be that of Dr. Nguyen, who supervised her work.  He adds that the ALJ erred further by assigning less weight to Erwin's report based on the limited duration of her relationship with Plaintiff.  The Court agrees with the Commissioner that the ALJ appropriately categorized Erwin's report and evaluated their relationship.

The regulations clearly address this issue, providing that a nurse practitioner such as Erwin is not recognized as an acceptable medical source.  20 C.F.R. § 404.1513(a).  The Commissioner may consider the opinions of other sources, including nurse practitioners and physician's assistants such as Ms. Erwin, as evidence of the severity of a claimant's impairments and of the effect of a claimant's impairments on his or her ability to work.  20 C.F.R. § 404.1513(d).

Opinions from other sources are accorded less weight than that accorded the opinion of a physician or other accepted source.  *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996).  Nonetheless, the opinions of nurse practitioners regarding the effects of impairments on a claimant's ability to work must be considered and the weight given to those opinions must be explained.  20 C.F.R. § 404.1513(d); 416.913(d); SSR 06-03p.  When the clinical notes or other materials attributable to a nurse practitioner or similar source compose a significant portion of the record, that evidence constitutes significant and probative evidence that the ALJ must consider. *See Wick v. Astrue*, 2009 WL 2393106 at *9 (D. Or. July 31, 2009) (Civil No. 08-6108-MO) (holding that the Commissioner erred in disregarding the clinical notes of a

nurse practitioner that covered three years of treatment and encompassed 87 pages of the record). *Cf.*, *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (observing that an ALJ need not address every piece of evidence but only evidence that is significant and probative).

In SSR 06-03p, "the Social Security Administration recognized the growth of managed health care in this country and the increased reliance on 'other medical sources,' such as nurse practitioners and physician assistants for treatment and evaluation functions previously handled by medical doctors and licensed psychologists." *Reynolds v. Astrue*, 2010 WL 3516895 at *8 (E.D. Wash. September 3, 2010) (No. CV-09-0213-CI), *quoting* SSR 06-03p.  The Commissioner's ruling provided that adjudicators could give the opinions of "other medical sources" more weight than opinions of physicians based on how often the other source had seen the individual and if the other source's opinion has better supporting evidence than the opinion of the acceptable medical source. *Reynolds*, 2010 WL 3516895 at *8.

Accordingly, even though Erwin is a nurse practitioner, the ALJ was required to consider her opinion as to how Plaintiff's impairments affected his functional ability. *Id.* at *9.  To reject Erwin's opinions, the ALJ was required to set forth reasoning specific and germane to Erwin. *Id.*; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The regulations provide that medical opinions be evaluated by considering (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination, and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion.  28 C.F.R. § 404.1527(d).

The ALJ provided such analysis, determining that Erwin's opinion should be given little weight.  He questioned the length of time and the capacity in which Erwin treated Plaintiff.  He disregarded Erwin's opinion on whether or not Plaintiff was disabled, noting that the determination of whether a claimant is disabled is reserved to the Commissioner.  He further noted that "Ms. Erwin's opinion is not supported by the record overall and seems to rely solely on the claimant's subjective complaints."  AR 23.

///

Substantial evidence in the record supported the ALJ's assessment of Erwin's opinion. When Erwin prepared her opinion, Plaintiff had been a patient of Hillman Health Center, where Erwin worked with Dr. Nguyen, less than two months. Dr. Nguyen's initial evaluation on March 12, 2008, co-signed by Ms. Erwin, was entirely dependent on Plaintiff's own report of his condition. Plaintiff saw Dr. Nguyen to seek a surgical referral to address his gall stones, which had been diagnosed the previous summer. Following lab tests, Dr. Nguyen referred Plaintiff to a surgeon on March 26, 2008. At the same appointment, Erwin and Dr. Nguyen co-signed a report that Plaintiff complained of feeling depressed due to sadness and absence of social or sexual relationships, although his appetite was good and he slept "OK." Dr. Nguyen prescribed an antidepressant. At his regular followup appointment for diabetes on April 25, 2008, Plaintiff reported that his depression was better. Thus, when she rendered her opinion, Erwin had seen Plaintiff three or four times.

As the ALJ observed, nothing in Plaintiff's treatment records at Hillman Health Center related to Ms. Erwin's opinion that Plaintiff could sit for eight hours and stand or walk for two hours in an eight-hour workday, and that he was totally restricted from working in temperature extremes. Even when the opinion is offered by a treating physician, the ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). As the ALJ also observed, Ms. Erwin's opinion that Plaintiff was disabled but capable of sedentary work was not cognizable since those determinations are reserved to the Commissioner. *Magallanes*, 881 F.2d at 751.

Finally, Plaintiff offers no precedent for his remarkable contention that the ALJ should have treated Erwin's opinion as if it were an opinion rendered by Plaintiff's treating physician, Dr. Nguyen. The impropriety of Plaintiff's suggestion is magnified by the failure of Dr. Nguyen, who consistently co-signed treatment notes with Ms. Erwin, to co-sign the opinion. *See also Jamerson v. Chater*, 112 F.3d 1064, 1066-67 (9th Cir. 1997) (upholding the ALJ's decision to favor the opinions of two nontreating, non-examining physicians over that of a special education teacher who was not an acceptable medical source).

1    **VI.    Evaluation of Medical Evidence**

2          In a single paragraph, Plaintiff argues that the ALJ's step four analysis was unsupported

3    by substantial evidence.  Citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), he

4    argues that opinions of nonexamining physicians, in this case Drs. Fracchia and Rivera, cannot

5    constitute substantial evidence.   As discussed in section V above, the ALJ appropriately

6    discounted nurse practitioner Christina Erwin's opinion of Plaintiff's residual functional capacity

7    since she was not a physician, had treated Plaintiff for a limited time period, and offered opinions

8    that were inconsistent with Plaintiff's treatment records as well as the record as a whole.  No

9    other treating medical professional provided an opinion regarding Plaintiff's capacity to perform

10   work.

11         Physicians render two types of opinions in disability cases: (1) medical, clinical opinions

12   regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to

13   perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  In the step four

14   analysis, the relevant opinions are those regarding capacity to do work.  Three types of physicians

15   may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating

16   physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians);

17   and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)."

18   *Lester*, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than

19   the opinion of a doctor who examined but did not treat the claimant, and an examining

20   physician's opinion is generally entitled to more weight than that of a non-examining physician.

21   *Id.*  The Social Security Administration favors the opinion of a treating physician over that of

22   nontreating physicians.  20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631.  A treating physician is

23   employed to cure and has a greater opportunity to know and observe the patient.  *Sprague v.*

24   *Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nonetheless, a treating physician's opinion is not

25   conclusive as to either a physical condition or the ultimate issue of disability.  *Magallanes*, 881

26   F.2d at 751.  An ALJ is not required to accept the opinion of any physician, including a treating

27   physician, if the opinion is brief, conclusory, and inadequately supported by clinical findings.

28   *Thomas*, 278 F.3d at 957.

Although an ALJ may reject a treating physician's opinion whether or not it is contradicted, he or she may only reject an uncontradicted opinion for clear and convincing reasons. *Id.* Similarly, an ALJ may not disregard an uncontradicted opinion of a nontreating physician without articulating clear and convincing reasons for his decision to do so. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). The opinion of a nontreating source that contradicts the opinion of a treating source may constitute substantial evidence if it is based on independent clinical findings or on clinical findings not considered by the treating physician. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Resolution of the conflict presented in such cases rests solely with the administrative law judge. *Id.*

The only circumstance in which a nonexamining physician's opinion may not constitute substantial evidence is when that opinion is unsupported by corroborating evidence. *Andrews*, 53 F.3d at 1042. "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 11. *See also Morgan v. Commissioner of Social Security Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999); *Zlotnikov v. Apfel*, 2000 WL 635449 at *2-4 (N.D. Cal. May 11, 2000) (No. C 99-0135 MJJ), *aff'd*, 28 Fed.Appx. 699 (9th Cir. 2002) (discussing in detail reliance on opinions of non-examining physicians when they are supported by independent evidence).

In the hearing decision, the ALJ gave Ms. Erwin's opinion little weight since it was not the product of an acceptable medical source, was based on treatment of an uncertain period and nature, inconsistent with the record as a whole, substantially based on Plaintiff's subjective complaints, and expressed a conclusory opinion that was reserved to the Commissioner. He then considered the opinions of Plaintiff's residual functional capacity offered by the state agency medical consultants, finding them specific and grounded in evidence in the record as a whole. in particular, the ALJ relied on the results of the pulmonary function test administered by examining physician Dr. Fabella, which revealed no evidence of obstructive or restrictive lung disease and on Dr. Fast's observation in light of those results that Plaintiff's claimed shortness of

breath was caused by his lack of physical conditioning and his failure to comply with prescribed

treatment of his diabetes.

The nonexamining physicians' opinions were based on the agency's securing a

pulmonary function test and on evidence relating to all of Plaintiff's treatment, not simply on Ms.

Erwin's 2-month interaction with Plaintiff to evaluate his suitability for gall bladder surgery.

This breadth of supporting documentation was sufficient to permit the nonexamining physicians'

opinions to constitute substantial evidence.  The ALJ did not err in adopting them.

## VII.   <u>Third-Party Adult Function Report</u>

In the hearing decision, the ALJ carefully considered the third-party adult function report

prepared by Plaintiff's niece, Jody Ellis:

> I also considered third party evidence submitted by the claimant's niece, Jody
> Ellis, dated April 24, 2008 which was generally consistent with the claimant's
> function report of the same date.  The claimant's niece reported that he lives with
> her and her family, and she reported he could wash dishes, watch TV, take the dog
> outside, and help with her eight year old grandson.  Specifically, she reported that
> the claimant watches her 8 year old grandson, and prepares meals for him when he
> is not at school.  She reported no limitations on his ability to handle his personal
> care and that every day he prepares meals and washes dishes without help or
> encouragement.  She also reported that he goes outside about every three hours
> and he drives to the store by himself every week while she is at work.  She
> reported he shops for food once a week while she is at work and he did not need
> to be reminded to go places and he did not need someone to accompany him.  I
> find her report to be generally credible, consistent with the record overall and I
> give it substantial weight.  Accordingly, I find this third party evidence further
> contradicts the claimant's testimony of debilitating impairments.

AR 22 (*citations to administrative exhibits omitted*).

Plaintiff has headed this point, "The ALJ Improperly *Rejected* the Lay Testimony."  Doc.

16 at 19 (*emphasis added*).  Citing precedent requiring an ALJ to provide specific reasons for

*rejecting* the opinion of a third-party witness, Plaintiff contends that the ALJ erred in *accepting*

Ms. Ellis's report and in finding that it contradicted Plaintiff's testimony since limitations set

forth at AR 195-196 were not consistent with the ALJ's determination that Plaintiff had the

residual functional capacity to perform medium semi-skilled work on a sustained basis.

Plaintiff's convoluted argument sets the precedent on which he relies on its ear.

When a claimant alleges symptoms that are not supported by medical evidence in the

record, the agency directs the adjudicator to obtain information about those symptoms from third

parties likely to have such knowledge.  SSR 88-13.  The ALJ must give "full consideration" to

such testimony.  *Id.*  The ALJ did so here, finding Ms. Ellis's report consistent with the record,

entitled to substantial weight, and contradictory to Plaintiff's testimony of greater impairment.

Nonetheless, lay testimony is not equivalent to medical evidence that may be relied upon to

establish the existence of a disability.  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

        The ALJ's acceptance of Ms. Ellis's report did not require the ALJ to wholly adopt the

report without consideration of the evidence as a whole.  The regulations explain that, in addition

to medical source opinions, non-medical sources, including relatives, neighbors, and caregivers,

may provide evidence regarding the severity of a claimant's impairments and the effect of the

impairments on the claimant's ability to work.  20 C.F.R. § 416.913(d)(4).  "Lay testimony as to

a claimant's *symptoms* is competent evidence which the Secretary must take into account, unless

he ultimately determines to disregard such testimony, in which case 'he must give reasons that

are germane to each witness.'"  *Nguyen*, 100 F.3d at 1467, *quoting Dodrill*, 12 F.3d at 919.

Friends and family members who are in a position to observe the claimant's symptoms and daily

activities are competent to testify about their observations of the claimant's condition.  *Dodrill*,

12 F.3d at 918-19.  But, although a third-party witness is competent to testify to a claimant's

symptoms, lay witnesses are not competent to make medical diagnoses based on those

symptoms.  *Nguyen*, 100 F.3d at 1467.  For example, a lay witness in not competent to opine that

a claimant has a serious mental impairment as a result of a stroke.  *Id.*

        Plaintiff argues that the ALJ erred in failing to specifically address Ms. Ellis's reports of

Plaintiff's shortness of breath and difficulty lifting, squatting, bending, walking, kneeling, stair

climbing, concentrating, following instructions, completing tasks, and handling stress and

changes in routine.  Ms. Ellis's report illustrates *Nguyen*'s distinction between symptoms and

daily activities, and diagnoses or derivative opinions.  Ellis provided no response to the report's

request for an explanation of how Plaintiff's conditions affected his ability to lift, squat, bend,

kneel, climb stairs, complete tasks, concentrate, understand, or follow instructions.  *See* AR 195.

She merely added that Plaintiff experienced shortness of breath when he walked more than ten

feet.

The ALJ properly relied on the objective, observable portions of the report: Plaintiff's regular activities and the tasks that Plaintiff was able to perform.  The Court agrees with the Commissioner that the ALJ's failure to address each response in Ms. Ellis's eight-page report was harmless.

A reviewing court may consider an error harmless when no reasonable ALJ would have reached a different disability result, even if he or she had fully credited the testimony.  *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  The ALJ did not err by explicitly relying on Ms. Ellis's concrete and observable examples and disregarding her imperfect attempts to quantify Plaintiff's abilities.  *See Lockwood v. Commissioner Social Security Admin.*, 397 Fed. Appx. 288, 291 (9th Cir. 2010).  For example, no ALJ would find that an individual who is capable of grocery shopping and caring for an eight-year-old child is able to walk no more than ten feet.  "Because the testimony of lay witnesses encompasse[s] only symptoms, any failure of the ALJ to adequately address that testimony does not affect the outcome of this case."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 n. 6 (9th Cir. 2005).

### E.      Step Two: Inclusion of Depression as a Severe Impairment

In a single, undeveloped paragraph, Plaintiff contends that since the ALJ gave weight to Dr. Middleton's July 14, 2008 opinion, he erred in failing to include depression among Plaintiff's severe impairments.  The Commissioner disagrees, noting that, consistent with Dr. Middleton's opinion, the ALJ analyzed Plaintiff's claim of depression and dismissed it as inadequately supported by the record.

In addition to the five-step process outlined above, agency medical and psychiatric consultants evaluate mental impairments using the psychiatric review technique.  20 C.F.R. § 416.920a.  If a claimant has only mild limitations in activities of daily living; social functioning; concentration, persistence, and pace; and has no extended episodes of decompensation, a psychiatric impairment is not severe.  20 C.F.R. § 416.920a(d).  The agency consultants are responsible for determining medical severity at the initial and reconsideration levels of administrative review of a SSI application.  20 C.F.R. § 416.920a(e)(1).  Accordingly, on July 14, 2008, agency psychologist A, Middleton, Ph.D., prepared the psychiatric review technique and

determined that Plaintiff's depression was not a severe impairment.  In accordance with the regulations, Judge Berry applied the technique in drafting the hearing decision, as set forth at AR 18.  20 C.F.R. § 416.920a(e).

As the hearing decision reflected, the record included little evidence regarding Plaintiff's depression, consisting only of Plaintiff's complaint to Dr. Nguyen on March 26, 2008, that he felt depressed, although his eating and sleeping habits were not disturbed.  Based on Plaintiff's subjective representations, Dr. Nguyen prescribed an antidepressant.  At his next appointment (April 25, 2008), Plaintiff told Nguyen that he was already feeling better.  After reviewing the administrative record, Dr. Middleton rejected Plaintiff's claims of depression as too recent to have met the duration requirement for benefits.  By the time of the hearing, Plaintiff had discontinued using the prescribed antidepressant, which produced suicidal thoughts, but testified that he was feeling well.

"The Step Two inquiry is a *de minimus* screening device to dispose of groundless or frivolous claims."  *Salvatera v. Astrue*, 2012 WL 603205 at * 7 (E.D. Cal. February 23, 2012) (No. 1:10-cv-01464-SKO).  *See also Bowen v. Yuckert*, 482 U.S. 137 (1987).  At step two of the analysis, the claimant has the burden of producing medical evidence of signs, symptoms, and laboratory findings supporting the conclusion that his or her impairment is severe and can be expected to last more than twelve months.  *Ukolov*, 420 F.3d at 1004-05.  "Although the regulations provide that the existence of a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone."  SSR 96-4p.  Nor may the existence of a severe impairment be based on the claimant's own testimony of his or her symptoms.  20 C.F.R. § 416.920(c).

The mere existence or diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990); *Key*, 754 F.2d at 1549.  Even if the claimant is diagnosed with a listed impairment, that impairment may not qualify as a severe impairment if the impairment is not severe enough or if the claimant has not had it for a sufficient length of time.  *Kennedy v. Sullivan*,

919 F.2d 144 (table), 1990 WL 177973 (9th Cir. November 15, 1990) (No. 88-15609).  If the medical evidence indicates only a slight abnormality or combination of slight abnormalities that have no more than a minimal effect of the claimant's ability to work, the abnormality or combination of abnormalities is not a severe impairment.  SSR 85-28.   If a claimant's impairment is not severe, the ALJ must find the claimant not to be disabled at step 2.  *Wafer v. Sullivan*, 1994 WL 141649 at *4 (N.D. Cal. April 13, 1994) (No. C-92-3763 EFL); 20 C.F.R. § 416.920(a)(4)(ii).

A severe impairment is one that significantly limits the claimant's physical or mental ability to perform basic work activities.  *Wafer*, 1994 WL 141649 at *4; 20 C.F.R. § 416.920(c). Basic work activities include "the abilities and aptitudes to do most jobs," including "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apabilities for seeing, hearing, and speaking; (3) [u]nderstanding carrying out and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting."  20 C.F.R. § 416.921(b).  In determining the severity of an impairment, an ALJ need only find that the claimant retains the specific ability or aptitude.  *Yanez v. Astrue*, 252 Fed.Appx. 792, 793 (9th Cir. 2007).  For example, in *Yanez*, that the ALJ found that Yanez could walk effectively after his knee was surgically reconstructed was sufficient.  *Id.*

No evidence in the record supported a finding that Plaintiff's mild and short-lived depression significantly limited Plaintiff's ability to work.  The ALJ did not err in failing to include depression among Plaintiff's severe impairments.

**VIII.   <u>Step Four Analysis</u>**

In a single paragraph, Plaintiff argues that the ALJ erred in the step four analysis by failing to incorporate all of Plaintiff's limitations and by assuming that Plaintiff could again secure a Class A drivers' license.  To the extent that it has rejected the additional limitations in the prior sections of this order, the Court need not address Plaintiff's contention that the ALJ omitted those limitations from his step four analysis.

Nor need this Court accept Plaintiff's unsupported assertions that he could not secure a Class A driver's license were he now to reapply.  In performing the step four analysis, the ALJ's

determination is not dependent on whether the claimant's past job still exists or whether it is still available to the claimant, but whether the claimant is physically and mentally capable of performing the duties of his or her prior work.  At step four, the claimant bears the burden of proving that he or she is functionally unable to perform the duties of his or her prior job.  SSR 82-40 at *2.

Disability, as defined by the Act, requires the ALJ to determine that the claimant is unable to perform "substantial gainful activity by reason of any medically determinable physical or mental impairment . . . . ." 42 U.S.C. § 423 (d)(1)(A).  "[A] finding of disability under that statute must be based upon a lack of physical or mental capabilities on the part of the claimant, not upon other factors which prevent the claimant from obtaining work." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  Accordingly, the step four analysis requires a comparison of the claimant's residual functional capacity with the kind of work that the claimant has done in the past.  20 C.F.R. §§ 404.1560 (b)(3) and 416.960 (b)(3).  Neither regulation requires the ALJ to determine whether the claimant can return to the same job that he held before or find one exactly like it. *Pass*, 65 F.3d at 1204.  "Past relevant work in the regulatory scheme is a gauge by which to measure the physical and mental capabilities of an individual and the activities that he or she is able to perform, rather than a means by which to assure that the individual can actually find employment." *Id.*

Reflecting Congressional intent that disability benefits be clearly distinguished from unemployment benefits, the basic program principle requires that the claimant's impairment be the primary reason for his or her inability to engage in substantial gainful work.  SSR 82-61.  An individual must be found not to be disabled if he or she retains the residual functional capacity to perform either (1) the actual functional demands and job duties of a particular past relevant job or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  *Id.*

The principle is further illustrated by application to claimants whose past work was performed outside the U.S. economy and lacks a substantially similar counterpart within the United States.  The Commissioner clarified:

> An individual is to be found under a disability only if his or her mental impairment(s) is the primary reason for inability to engage in substantial gainful work activity.  Factors including change of residence from one geographical area to another, lack of job openings, and employers' hiring practices are not pertinent to the decision.  The proper test in the sequential evaluation process is whether the individual can do his or her previous work . . . . .

SSR 82-40.

*See also So v. Sullivan*, 1989 WL 281939 (N.D. Cal. October 30, 1989)(No. C-88-0970 MHP)

("Under the Social Security Act, if a claimant is *capable* of performing his past work, he is not

disabled, regardless of whether such work exists or is available to him.")

The Commissioner generally does not consider the claimant's ability to secure any

licensure at step four.  Michael Flaherty and Wendy S. Sigillo, *Social Security Law and Practice* §

43:111 (Thompson Reuters/West 2012).  If a claimant contends that he is unable to perform his

prior relevant work as a result of a medically based reason that prevents him from meeting

licensure requirements, however, the ALJ is directed to "carefully assess the impact of the

claimant's impairment-related limitations or restrictions, including limitations or restrictions

resulting from prescribed treatment, on the claimant's RFC."  POMS § DI 25005.001 (C)

(*effective* October 4, 2011).  For example, "[i]f a drug prescription disqualifies a claimant from

performing his past relevant work, he is not capable of returning to that work."  *Berry v. Astrue*,

622 F.3d 1228, 1231 (9th Cir. 2010).

Plaintiff relies on *Berry* to argue that he too must be found disabled and declared eligible

for benefits.  Because his case is distinguishable from Berry, his reliance is misplaced.

Berry, formerly a commercial courier driver, alleged disability arising from chronic low

back pain, degenerative disc disease, degenerative arthritis in both hips, bilateral knee

degeneration, sleep apnea, depression, diabetes, obesity, hearing loss, hemorrhoids, and night

sweats.  *Id.* at 1230.  At his hearing before the agency, Berry contended that he could not return to

work as a commercial courier driver because he would fail the job's mandatory drug testing

requirement due to his prescription pain medications.  *Id.*  Observing that the DOT listing did not

mention a drug testing requirement, the ALJ denied Berry's offer to prove that the job carried

such a requirement and refused to consider whether, if such a requirement existed, Berry was

capable of meeting it.  *Id.*  The ALJ concluded that Berry was not disabled; the Appeals Council and District Court affirmed.  *Id.* at 1231.

The Ninth Circuit held that the ALJ erred in denying Berry the opportunity to make a record about whether his medically required prescriptions barred him from working as a courier. *Id.*  It rejected the Commissioner's argument that a claimant's inability to pass a drug test is not the type of medical restriction contemplated by the Social Security regulations, stating "The ALJ was not permitted to ignore the possibility that such a mandatory requirement exists, in the face of Berry's offer of proof, merely because no such physical demand appears within the DOT."  *Id.* at 1232.

In remanding the case, the Ninth Circuit emphasized the interaction between Berry's burden of proving he was unable to return to work and the ALJ's refusal to allow him to carry that burden:

> The district court also relied on the lack of evidence in the record that courier jobs carry a mandatory drug testing requirement or that Berry would be unable to pass such a test.  Although the claimant bears the burden at step four to show he is unable to return to his past relevant work, *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999), it was error to fault Berry for failing to meet that burden when he was prevented from presenting relevant evidence because of the ALJ's legal error.

*Berry*, 622 F.3d at 1233.

In contrast, until his appeal to this Court, Plaintiff did not argue that he could not pass the medical examination necessary to return to his job as truck driver.  He made no such offer of proof below and offered nothing to this Court indicating a willingness or ability to prove his inability to pass the medical examination. Nor has Plaintiff introduced any evidence whatsoever of the nature and requirements of the medical examination necessary to secure and retain a commercial driver's license.  Indeed, the only proof he offered about leaving his prior job was his own report that he lost his commercial license due to diabetes and high blood pressure, and Dr. Kumar's note that Plaintiff lost his commercial driver's license due to hypertension.  As a result, Plaintiff failed to carry his burden of proof at step four.  Unlike the ALJ in *Berry*, Judge Berry played no role in Plaintiff's failure of proof in this case.

1   The Ninth Circuit remanded Berry's claim to the Commissioner because of the ALJ's error

2   in denying Berry the opportunity to present the proofs that he offered.  Because Plaintiff's failure

3   to meet his burden of proof was not the product of ALJ error, remand is not appropriate here.

4   **IX.   ALJ Bias**

5   Plaintiff contends that the ALJ failed to respond to his attorney's request that he recuse

6   himself due to systematic bias against Plaintiff's attorney.  He requests that "his case be remanded

7   and assigned to a different judge if it is not reversed outright."  Doc. 16 at 22.  The Commissioner

8   counters that Plaintiff has made no allegations supporting a conclusion that the ALJ could not

9   render a fair judgment in his case.

10   On November 9, 2009, Plaintiff's counsel, Jeffrey Milam, requested that Berry recuse

11   himself from the case.  AR 218.  In addition to extensively quoting from an unidentified prior

12   case, Milam stated that ALJ Berry had previously recused himself from Milam's cases but had

13   resumed hearing them after other attorneys also moved for Berry's recusal from their cases.

14   Milam alleged that although Berry approved 35-50 percent of the cases before him, the ALJ

15   approved only five to ten per cent of Milam's cases.  Milam added that Berry was contemptuous

16   toward Milam and his clients, and unnecessarily delayed, confused and complicated the hearing

17   process of Milam's cases.  On December 7, 2009, ALJ Berry replied in a single sentence, "Your

18   arguments of bias are unfounded and without merit, therefore I refuse to recuse myself from

19   hearing this case."  AR 131.

20   Procedural due process mandates an impartial decision maker who decides the case based

21   on applicable legal rules and the evidence adduced at the hearing, and states the reasons for his for

22   her determinations and the evidence supporting them.  *Goldberg v. Kelly*, 397 U.S. 254, 271

23   (1970).  Administrative law judges are presumed to be unbiased.  *Schweiker v. McClure*, 456 U.S.

24   188, 195 (1982); *Valentine v. Commissioner Social Security Admin.*, 574 F.3d 685, 690 (9th Cir.

25   2009); *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001); *Verduzco v. Apfel*, 188 F.3d

26   1087, 1089 (9th Cir. 1999).  The "appearance of impropriety standard" does not apply.  *Bunnell v.*

27   *Barnhart*, 336 F.3d 1112, 1114-15 (9th Cir. 2003).

28   ///

The party asserting bias bears the burden of proving a conflict of interest or other specific reason requiring disqualification. *Schweiker*, 456 U.S. at 195-96; *Rollins*, 261 F.3d at 858. To do so, the party moving for recusal must establish that the ALJ's behavior was "so extreme as to display clear inability to render fair judgment." *Rollins*, 261 F.3d at 858, *quoting Liteky v. United States*, 510 U.S. 540, 555-56 (1994). *See, e.g., Valentine*, 574 F.3d at 690 (finding that an ALJ's questioning some of the claimant's arguments or the perspective of the claimant's treating physicians did not constitute bias); *Verduzco*, 188 F.3d at 1089 (holding that the claimant failed to prove that the ALJ was prejudiced against him based on his decision to testify through an interpreter.) Plaintiff's opening brief articulates no actions of Judge Berry in this case that constituted behavior demonstrating an inability to render a fair judgment.[2]

Judicial rulings alone are generally insufficient to establish bias and are more properly addressed through appeal, not recusal. *Liteky*, 510 U.S. 540, 555. Accordingly, absent a showing of wrongful or inappropriate bias or prejudice, a district judge, who had presided over a previous trial of the same defendant, was not required to recuse himself from a second trial arising from a separate incident based on his rulings, trial administration and ordinary admonishments in the prior trial. *Id.* at 555-56.

The same principal applies when an attorney seeks recusal based on one or more prior cases in which the attorney contends that the ALJ demonstrated bias against the attorney. In his letter requesting recusal, Milam referred to a prior Court finding that Judge Berry had demonstrated bias against Milam. Neither Milam's letter nor Plaintiff's opening brief in this action identified the case to which Milam referred. That the prior decision was not identified does not matter. "Bias must be shown within the context of an individual case." *Galarza v. Astrue*, 454 Fed.Appx. 627 (9th Cir. 2011). That a court found an ALJ to have been biased against the claimant's attorney in a previous case is not sufficient to require the ALJ to recuse him- or herself. *Id. See, e.g., Yang v. Astrue*, 2010 WL 476022 at *9-10 (E.D. Cal. February 4, 2010) (No. 1:08-cv-00084-GSA) (rejecting Milam's claim that Berry was biased against him based on a prior case

---

[2] Plaintiff's brief claims to allege bias for the reasons set forth in "Request for Review." No such document appears in the agency record or this Court's docket.

1  (*Hixson v. Astrue*, 1:06-cv-00353-OWW-DLB[3]) since Plaintiff failed to produce any evidence of

2  bias in Plaintiff Hixson's case).

3        Because Plaintiff failed to allege any basis for Judge Berry to recuse himself in Plaintiff's

4  case, Judge Berry did not err in refusing to recuse himself.  Since this Court affirms the

5  Commissioner's determination, Plaintiff's request for a different ALJ on remand is moot.

6  **VIII.   Conclusion and Recommendation**

7        A review of applicable law and facts indicates that the ALJ applied appropriate legal

8  standards and that substantial credible evidence supported the ALJ's determination that Plaintiff

9  was not disabled.  Accordingly, the undersigned recommends that the District Court affirm the

10  Commissioner's determination.

11        These Findings and Recommendations will be submitted to the Honorable Anthony W.

12  Ishii, United States District Judge, pursuant to the provisions of 28 U.S.C § 636(b)(1).  On or

13  before October 12, 2012, any party may file written objections with the Court.  The document

14  should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

15  Plaintiff is advised that, by failing to file objections within the specified time, he may waive the

16  right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

17

18  IT IS SO ORDERED.

19  **Dated:     September 16, 2012              /s/ Sandra M. Snyder**

20                                    UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28        [3]  The Court reviewed the Findings and Recommendations adopted in *Hixson* and determined that the
language quoted in Milam's letter to Judge Berry is derived from that case.  *Hixson v. Astrue*, Doc. 34 at 36 (E.D.
Cal. September 14, 2007) (No. 1:06-cv-00353-OWW-DLB).